IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CHARLES CARTER, )<br>    Plaintiff, )<br>)<br>v. )<br>)<br>LARRY ROSS COLLINS, et al., )<br>    Defendants. ) | Case No. 7:22-cv-00025<br><br>By: Michael F. Urbanski<br>Chief United States District Judge |

### MEMORANDUM OPINION

Charles Carter, a state inmate proceeding pro se, filed this civil action under 42 U.S.C. § 1983 against multiple individuals employed at Red Onion State Prison ("Red Onion"), including Nurse Trent and Nurse Practitioner Leah Jessee (collectively, the "medical defendants"). The case is presently before the court on the medical defendants' motion for summary judgment for failure to exhaust administrative remedies, ECF No. 46, and Carter's motion to stay consideration of the motion for summary judgment, ECF No. 114. For the reasons set forth below, the motion to stay is **DENIED**, and the motion for summary judgment is **GRANTED**.

### Background

#### I. Carter's Claims Against the Medical Defendants

Carter's complaint primarily stems from an incident that occurred on November 9, 2021, while he was housed in segregation at Red Onion. Carter alleges that correctional officers punched him and "slammed [him] to the floor, while [he] was in handcuffs and shackles, unable to protect [his] head, face or any other part of [his] body." Compl., ECF No. 1, at 8. Carter further alleges that officers escorted him to the medical unit in a broken wheelchair and

that they "let [his] feet drag all the way to medical, maliciously and intentionally inflicting wanton physical pain and injur[ies]." Id. at 9.

Carter claims that Nurse Trent did not provide adequate medical care after Carter arrived in the medical unit on November 9, 2021. Id. at 10. He claims that Nurse Practitioner Jessee disregarded his requests for medical treatment on November 10, 2021, when she was examining another inmate. Id. at 14. He also claims that Jessee did not provide adequate medical care when she examined him on November 22, 2021. Id. at 17–18.

## II. Inmate Grievance Procedure

Virginia Department of Corrections ("VDOC") Operating Procedure ("OP") 866.1, titled "Offender Grievance Procedure," outlines the processes used to resolve most complaints and grievances from inmates incarcerated in VDOC facilities, including complaints related to conditions of care. See OP 866.1, eff. Jan. 1, 2021, C. Meade Decl. Ex. A, ECF No. 47-1. Pursuant to OP 866.1, inmates must first utilize the "informal complaint process" described in the operating procedure. OP 866.1(I)(D). "The first step in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." Id. If the issue is not resolved to the inmate's satisfaction, the inmate may submit a "Written Complaint 866_F3."[1] Id.; see also OP 866.1 at p. 3 (defining "Written Complaint" as "[t]he second step in the informal complaint process in which the offender submits their issue in writing on a Written Complaint 866_F3"). "The Written Complaint must be received by designated staff within 15 days of the original incident or discovery of the incident." OP

---

[1] The terms "Written Complaint" and "Regular Grievance" are italicized and/or underlined throughout OP 866.1. All quotations in this opinion omit the italics and underlining.

866.1(I)(D). "The Institutional Ombudsman or other designated staff member must accept all Written Complaints 866_F3 for consideration unless the offender is limited." OP 866.1(II)(B). Responding staff members have 15 days to respond to a Written Complaint. Id.

If an inmate does not receive a response to a Written Complaint within fifteen days, or if an inmate is dissatisfied with staff's response to a Written Complaint, the inmate "may file a Regular Grievance 866_F1." OP 866.1(I)(D). "A completed Regular Grievance 866_F1 should contain a single grievable issue." OP 866.1(III)(B). The operating procedure further specifies that the issue being grieved must be "identical to and limited to the issue submitted on the Written Complaint" and that the Written Complaint must be filed with the Regular Grievance. OP 866.1(III)(B). "The Regular Grievance must be placed in the Grievance Mailbox within 30 days of the original incident or discovery of the incident unless a more restrictive timeframe applies." OP 866.1(I)(D). "Following acceptance of a Regular Grievance 866_F1," a staff member has 30 days to investigate and respond to the grievance. Id. If an inmate is dissatisfied with the response to a Regular Grievance, he may appeal to Level II, where the appeal is reviewed by the Regional Administrator, the Health Services Director, or the Chief of Operations for Offender Management Services. OP 866.1(IV)(C). OP 866.1 explains that an inmate satisfies the requirements for exhausting administrative remedies "only when a Regular Grievance has been accepted into the grievance process and appealed, without satisfactory resolution of the issue." OP 866.1(V)(B).

### III. The Medical Defendants' Evidence on Exhaustion

To support their motion for summary judgment, the medical defendants submitted a declaration executed by C. Meade, the Grievance Coordinator at Red Onion. The declaration

explains that a former version of OP 866.1 required inmates to submit an "Informal Complaint" form before filing a Regular Grievance. Meade Decl., ECF No. 47-1, at ¶ 8. In early 2021, OP 866.1 was revised to require the submission of a "Written Complaint 866_F3" form instead of an "Informal Complaint" form. See OP 866.1, eff. Jan. 1, 2021. The designated Written Complaint form was revised on June 21, 2021, to reflect modifications to the operating procedure. Meade Decl. ¶ 8. Meade's declaration indicates that "[a]t all times relevant to the claims brought against Nurses Trent and Jessee, inmates were required to submit the 'Written Complaint' forms as revised on June 21, 2021." Id. Meade further avers that "[t]he Informal Complaint forms were no longer acceptable and would be returned to the inmate with instructions to use the new Written Complaint form." Id.

On November 21, 2021, Carter submitted an old Informal Complaint form alleging that the medical defendants had not provided adequate medical treatment for the injuries that he received on November 9, 2021. See Compl. Ex., ECF No. 1-1 at 18. On November 22, 2021, prior to the fifteen-day deadline for filing a Written Complaint, Grievance Office Service Assistant ("OSA") T. Trapp responded to the filing and informed Carter that he had not used the correct Written Complaint form. Id. Trapp advised Carter to resubmit the complaint on the "updated form attached." Id.

The medical defendants note that Carter had been previously advised that he must use the correct Written Complaint form. Exhibits attached to Carter's complaint indicate that Carter submitted Informal Complaint forms complaining about the use of force on November 9, 2021. See ECF No. 1-1 at 9, 11, 19. In response to each complaint, OSA Trapp informed Carter that he must resubmit the complaint using the correct Written Complaint form. Id. On

4

November 16, 2021, Carter submitted a proper Written Complaint form complaining that correctional officers had used excessive force against him on November 9, 2021, and that Unit Manager Larry Collins had threatened to retaliate against him if he complained about the use of force. ECF No. 1-1 at 16. However, the Written Complaint did not raise any issues related to the medical care that he received following the use of force. Id. And according to the medical defendants' evidence, Carter "never submitted a Written Complaint or a grievance regarding the allegedly deficient medical care" that he received following the use of force on November 9, 2021. Meade Decl. ¶ 18.

### IV. Carter's Response and Motion to Stay

In response to the medical defendants' motion for summary judgment, Carter submitted his own declaration, a "statement of disputed factual issues," and an attached exhibit. In his declaration, Carter does not dispute that OP 866.1 specifically requires inmates to submit a Written Complaint form as part of the informal complaint process. See Carter Decl., ECF No. 70-2, at ¶ 9 ("Plaintiff do[es] not dispute the facts under VDOC Operating Procedure 866.1."). He does not dispute that he was instructed to submit the correct Written Complaint form when he filed an old Informal Complaint form alleging that the medical defendants had not provided adequate medical care following the use of force. He does not dispute that OSA Trapp returned the old Informal Complaint form to him, along with a copy of the Written Complaint form. Nor does he dispute that the Written Complaint form that he later submitted regarding the use of force did not complain about the quality of care provided by the medical defendants. See id. at ¶¶ 1–24; see also Compl., ECF No. 1, at 16 (acknowledging that Trapp "sent [the old forms] back with the updated forms").

5

Carter instead disputes whether prison staff continued to accept the old Informal Complaint forms in 2021. He cites to an attached Informal Complaint form that he submitted on July 21, 2021, more than three months prior to the events giving rise to this action, in which he complained that staff members were violating VDOC policy by not wearing face masks. Carter Decl. Ex. A, ECF No. 70-3 at 1. The Informal Complaint form was received on July 27, 2021, and on August 11, 2021, Lt. Barton responded to the complaint, noting that there was a barrier between Carter and staff members. Id. In the "statement of disputed issues" accompanying his declaration, Carter lists the following:

> (1) Whether the grievance staff at Red Onion State Prison accepted any . . . Informal Complaints after June 21, 2021.
>
> (2) Whether as alleged in the complaint that defendants conspired to cover up the incident which occurred on [November 9, 2021] concerning grievances.
>
> (3) Whether Plaintiff[']s initial complaint filed about the non medical treatment on [November 9, 2021] was impeded by grievance staff and/or Defendants named in the physical actions within the complaint.
>
> (4) Whether Grievance Coordinator C. Meade knowingly perjur[ed] herself with the intent to mislead the court's judicial proceedings, delay and prejudice Plaintiff.
>
> (5) Whether there was in fact a [requirement] to use the revised complaint forms dated June 21, 2021, and if Plaintiff did resubmit the complaint of issues.
>
> (6) Whether [the exhibit attached to Carter's declaration] contradicts Defendants' evidence and creates a genuine issue of material fact.

ECF No. 70-1 at 6–7.

On August 21, 2023, Carter filed a "motion to stay" the medical defendants' motion for summary judgment pending the resolution of a motion for summary judgment filed by the

correctional defendants. ECF No. 114. Carter asserts that a subsequent affidavit that Meade provided in support of the correctional defendants' motion for summary judgment is inconsistent with the declaration filed in support of the medical defendants' motion. To support this argument, Carter notes that the subsequent affidavit uses the term "informal complaint" when summarizing the efforts that inmates must take before submitting a formal grievance. See Meade Aff., ECF No. 109-1, at ¶ 6. Meade also refers to Written Complaint forms attached to the subsequent affidavit as "informal complaints." Id. at ¶¶ 11–16; see also Mead Aff. Encls. B, C, D, F, and G. Carter argues that the court should stay the medical defendants' motion for summary judgment and rule on the motion after deciding the correctional defendants' motion. ECF No. 114-1 at 2.

## **Standard of Review**

Under Rule 56 of the Federal Rules of Civil Procedure, the court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if 'a reasonable jury could return a verdict for the nonmoving party.'" Libertarian Party of Va. v. Judd, 718 F.3d 308, 313 (4th Cir. 2013) (quoting Dulaney v. Packaging Corp. of Am., 673 F.3d 323, 330 (4th Cir. 2012)). "A fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248–49 (1986)). When ruling on a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. To survive summary judgment, there must be sufficient evidence from which a reasonable finder of fact could return a verdict in the nonmoving party's favor. Id. at 252. "Conclusory or speculative

7

allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence." Matherly v. Andrews, 859 F.3d 264, 280 (4th Cir. 2017) (internal quotation marks and citation omitted).

## Discussion

### I. Carter's Motion to Stay

The court will first address Carter's motion to stay consideration of the medical defendants' motion for summary judgment pending a ruling on the correctional defendants' motion. Having reviewed the record, the court does not find that the requested stay is warranted. Accordingly, the motion to stay, ECF No. 114, will be denied. However, because Carter believes that the affidavit that Meade executed in support of the correctional defendants' motion is relevant to the resolution of the medical defendants' motion for summary judgment, the court has considered the affidavit and the attached exhibits. Nonetheless, for the reasons explained below, consideration of the additional evidence does not alter the court's decision on the medical defendants' motion for summary judgment.

### II. The Medical Defendants' Motion for Summary Judgment

The medical defendants have moved for summary judgment on the claims asserted against them on the basis that Carter failed to exhaust his administrative remedies, as required by the Prison Litigation Reform Act ("PLRA"). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot

be brought in court." Jones v. Bock, 549 U.S. 199, 211 (2007). The exhaustion requirement "serves two main purposes." Woodford v. Ngo, 548 U.S. 81, 89 (2006). First, it "protects administrative authority" by (1) giving "an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court," and (2) by discouraging "disregard of the agency's procedures." Id. (internal quotation marks, brackets, and citation omitted). Second, it "promotes efficiency" since claims "generally can be resolved much more quickly and economically in proceedings before an agency than in litigation in federal court." Id.

Over the past twenty years, the Supreme Court has "strictly interpreted" the PLRA's exhaustion provision. Williams v. Carvajal, 63 F.4th 279, 285 (4th Cir. 2023). The Court has held that the provision "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). The Court has also held that "proper exhaustion" is required, which means that "a prisoner must complete the administrative review process in accordance with applicable procedural rules, including deadlines, as a precondition for bringing suit in federal court." Woodford, 548 U.S. at 88, 90. Thus, an "untimely or otherwise procedurally defective administrative grievance" does not satisfy the exhaustion requirement. Id. at 83–84.

The Supreme Court "has also made it clear that it will not read 'exceptions into statutory exhaustion requirements where Congress has provided otherwise.'" Id. (quoting Booth v. Churner, 532 U.S. 731, 741 n.6 (2001)). "For that reason, mandatory exhaustion statutes like the PLRA . . . foreclos[e] judicial discretion," meaning that "a court may not

9

excuse a failure to exhaust, even to take [special] circumstances into account." Ross v. Blake, 578 U.S. 632, 639 (2016). The only exception to the PLRA's exhaustion requirement is "the one baked into its text: An inmate need exhaust only such administrative remedies as are 'available.'" Id. at 648. If an administrative remedy "is not capable of use to obtain relief . . . , an inmate's duty to exhaust 'available' remedies does not come into play." Id. at 643. The Supreme Court has identified three circumstances in which an administrative grievance procedure is not "capable of use" in this sense: (1) where the procedure "operates as a simple dead end," with correctional officials "unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the procedure is "so opaque" that it is "practically . . . incapable of use" because "no ordinary prisoner can discern or navigate it"; and (3) where correctional officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44; see also Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008) ("[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it.").

Because "failure to exhaust is an affirmative defense under the PLRA," defendants bear the burden of establishing that an inmate failed to exhaust his administrative remedies. Jones, 549 U.S. at 216. Once defendants establish that a plaintiff failed to exhaust, however, "the onus falls on the plaintiff to show that remedies were unavailable to him." Tuckel v. Grover, 660 F.3d 1249, 1254 (10th Cir. 2011); see also Graham v. Gentry, 413 F. App'x 660, 663–64 (4th Cir. 2011) (concluding that summary judgment was appropriate where an inmate failed to

fully comply with a jail's grievance procedure and failed to "adduce facts showing that he was prevented, through no fault of his own, from availing himself of that procedure").

### A. Proper Exhaustion

The court will first address whether the medical defendants have met their burden of establishing that Carter failed to exhaust his administrative remedies. As previously explained, the PLRA requires inmates to exhaust administrative remedies before filing suit, Jones, 549 U.S. at 202, and the Supreme Court has interpreted the PLRA to require "proper exhaustion" in accordance with "an agency's deadlines and other critical procedural rules," Woodford, 548 U.S. at 90. This "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. (internal quotation marks and citation omitted).

Having carefully reviewed the record, the court concludes that no genuine issue of material fact exists as to whether Carter satisfied the exhaustion requirement with respect to his claims against the medical defendants. It is undisputed that the applicable procedural rules are set forth in OP 866.1 (eff. Jan. 1, 2021) and that they require inmates to attempt to resolve an issue through the "informal complaint process" before submitting a Regular Grievance. OP 866.1(I)(D). As relevant here, OP 866.1 provides that an inmate must "submit the Written Complaint 866_F3" form to designated staff "within 15 days of the original incident or discovery of the incident," OP 866.1(II)(B), and that any subsequent Regular Grievance must be "identical to and limited to the issue submitted on the Written Complaint," OP 866.1(III)(B). Here, there is no evidence from which a reasonable factfinder could conclude that Carter filed a "Written Complaint 866_F3" form complaining of inadequate treatment by

11

the medical defendants. Although Carter filed an old Informal Complaint form complaining of inadequate medical treatment, it is undisputed that the old form was rejected by a grievance officer, that Carter was specifically directed to resubmit the Written Complaint form specified in OP 866.1, and that he was provided with a copy of the Written Complaint form. While Carter subsequently filed a Written Complaint related to the use of force on November 9, 2021, the Written Complaint did not allege any denial of medical treatment or otherwise include information "sufficient to alert the prison to the nature of the wrong for which redress is sought" against the medical defendants. Wilcox v. Brown, 877 F.3d 161, 167 n.4 (4th Cir. 2017) (internal quotation marks, brackets, and citation omitted).

Additionally, there is no evidence that Carter filed any other Written Complaints or Regular Grievances complaining about the quality of care provided for his alleged injuries. Although Carter lists as a disputed issue whether he "did resubmit the complaint of issues," ECF No. 70-2 at 7, merely labeling a factual issue as disputed does not make it so. Instead, "the nonmoving party must present specific facts showing that there is a genuine issue for trial." Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532, 540 (4th Cir. 2015). Carter's conclusory assertion in his "statement of disputed factual issues" does not satisfy this requirement. See id. ("To create a genuine issue for trial, the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence."); see also Mixson v. Clarke, No. 7:20-cv-00240, 2022 WL 4017283, at *5 (W.D. Va. Sept. 2, 2022) (concluding that an inmate's conclusory assertions of exhaustion were insufficient to withstand summary judgment).

Thus, the court concludes that there is no genuine dispute as to whether Carter properly exhausted his administrative remedies with respect to his claims against the medical defendants. While Carter obviously disputes whether prison staff continued to respond to Informal Complaint forms in 2021, that dispute is not material to the resolution of the instant case, since the applicable procedural rules require the submission of a specific Written Complaint form and Carter had the opportunity to resubmit the correct form.[2] As other courts have recognized, presenting a "non-complying" grievance or complaint does not suffice to satisfy the exhaustion requirement, Brewer v. Mullin, 130 F. App'x 264, 265 (10th Cir. 2005), particularly when an inmate is "notified of deficiencies" and has the "opportunity to cure them," Thomas v. Parker, 609 F.3d 1114, 1118 (10th Cir. 2010). And to the extent Carter believes that the grievance officer erred in declining to accept the old Informal Complaint form, "that does not mean that he can simply ignore [the officer's] determination and opt out of the grievance procedure." Brewer, 130 F. App'x at 265; see also Haywood v. Baylor, 804 F. App'x 401, 403 (7th Cir. 2020) (holding that because "refiling" a defective grievance was an available option, an inmate's failure to exhaust was "not excusable"); Prosha v. Coleman, No. 3:22-cv-00183, 2023 WL 5673442, at *9 (E.D. Va. Sept. 1, 2023) (concluding that an inmate's claim against a VDOC officer was not properly exhausted since he did not attach a copy of a

---

[2] The court also notes that Meade's subsequent affidavit filed in connection with the correctional defendants' motion does not reflect any inconsistency as to whether inmates are now required to submit a Written Complaint form at the second step of the informal complaint process. Although the affidavit uses the term "informal complaint," it does not suggest that the old Informal Complaint form is an acceptable substitute for the Written Complaint 866_F3 form specified in OP 866.1. Similarly, while the affidavit refers to "informal complaints" submitted by Carter that were processed and answered, the referenced exhibits are complaints that Carter submitted using the proper Written Complaint form. See ECF No. 109-1 at 25–27, 30–31. Thus, rather than contradicting Meade's initial declaration, the exhibits to her subsequent affidavit indicate that Carter had access to Written Complaint forms and that he was able to submit them.

Written Complaint to his Regular Grievance, as required by OP 866.1, or "avail himself of the opportunity to resubmit a Regular Grievance with the results of the informal complaint process").

For these reasons, the court concludes that no genuine issue of material fact exists as to whether Carter properly exhausted his administrative remedies with respect to his claims against the medical defendants and that the medical defendants have met their burden of proving that he failed to do so.

### B. Availability

Carter's response to the medical defendants' motion for summary judgment alternatively suggests that administrative remedies were unavailable to him. As explained above, the Supreme Court has identified "three kinds of circumstances in which an administrative remedy, although officially on the books, is not capable of use to obtain relief." Ross, 578 U.S. at 643. One situation is when prison officials "thwart inmates from taking advantage of a grievance procedure through machination, misrepresentation, or intimidation." Id. at 643–44. Carter specifically invokes that exception, asserting that he was "already threaten[ed] with retaliation by Defendant Larry Ross Collins," that "Collins and Lt. Barton . . . intentionally provided [him] with old complaint forms," and that "the conspiracy itself creates a dispute for trial." Carter Decl., ECF No. 70-2, at ¶ 14.

The problem with Carter's argument is that there is undisputed evidence establishing that the alleged actions on the part of correctional officers did <u>not</u> in fact preclude Carter from submitting the proper Written Complaint form. See Moss, 19 F.4th at 622 (affirming the grant of summary judgment on the issue of exhaustion where the record demonstrated that an

14

inmate was able to participate in the grievance process, notwithstanding the alleged obstacles posed by being on lockdown with limited access to written grievance forms). As the United States Court of Appeals for the Fourth Circuit explained in Moss, "a grievance process is rendered 'unavailable' under the PLRA only if an inmate actually is prevented from using it." Id. at 623. "If an inmate is able to access a grievance process despite official threats or 'machinations,' then that process is 'capable of use' by him." Id. (quoting Ross, 578 U.S. at 643–44).

    Here, the record establishes that Carter was able to submit proper complaint forms, "notwithstanding alleged obstacles." Id. Although officers initially gave Carter old Informal Complaint forms that were rejected by OSA Trapp, it is undisputed that Trapp sent Carter copies of the correct Written Complaint form to resubmit. It is also undisputed that Carter was able to submit Written Complaint forms and a Regular Grievance following the incident on November 9, 2021, despite being threatened with retaliation by Collins. Indeed, the record reflects that on November 16, 2021, Carter signed a Written Complaint alleging that Collins had "threaten[ed] him with retaliation" and that the Written Complaint was received by the grievance office on November 17, 2021. ECF No. 1-1 at 16. The record also reflects that Carter filed a Regular Grievance in which he alleged that Collins was retaliating against him and that the Regular Grievance was received by the grievance office on December 20, 2011. ECF No. 1-1 at 14. On this record, no reasonable factfinder could conclude that Carter "actually [was] prevented" from properly exhausting his administrative remedies with respect to his claims against the medical defendants. Moss, 19 F.4th at 623. Because Carter had the

15

opportunity to resubmit a Written Complaint form complaining of inadequate medical treatment, his failure to do so is "not excusable." Haywood, 804 F. App'x at 403.

In sum, there is no evidence from which a reasonable factfinder could conclude that Carter properly exhausted his administrative remedies with respect to his claims against the medical defendants or that the administrative procedure he could have utilized was unavailable to him through no fault of his own. Accordingly, the medical defendants are entitled to summary judgment on the exhaustion defense.[3]

## Conclusion

For the reasons stated, Carter's motion to stay consideration of the medical defendants' motion for summary judgment, ECF No. 114, is **DENIED**, and the medical defendants' motion for summary judgment, ECF No. 46, is **GRANTED**. An appropriate order will be entered.

Entered: September 28, 2023

Michael F. Urbanski
Chief United States District Judge

---

[3] In reaching this decision, the court expresses no opinion on the exhaustion-based motion for summary judgment filed by the correctional defendants. That motion remains pending and will be addressed separately.